**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WALTER O., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   No. 20 C 1938 |
| | ) |
| KILOLO KIJAKAZI, Acting | )   Magistrate Judge Finnegan |
| Commissioner of Social Security,[1] | ) |
| | ) |
|     Defendant. | ) |

## ORDER

Plaintiff Walter O. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing memorandum in support of affirming the decision. After careful review of the record and the parties' respective arguments, the Court finds that the case must be remanded for further proceedings.

## BACKGROUND

On February 1, 2013, Plaintiff was found disabled as of September 8, 2011 due to alcohol-related chronic liver disease and cirrhosis with the presence of ascites, which was sufficient to meet Listing 5.05B. (R. 66-77). Born in 1979, Plaintiff was 31 years old as

---

[1]     Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

of the disability onset date, and was at all relevant times a younger individual. (R. 201); 20 C.F.R. §§ 404.1563(c), 416.963(c). He completed two years of college and worked for approximately 11 years as a childcare attendant prior to becoming disabled. (R. 237). Following an updated medical review, the Social Security Administration determined on April 28, 2017 that Plaintiff was no longer disabled as of April 1, 2017 because he experienced medical improvement. (R. 97, 99, 104-08). This decision was upheld on reconsideration on May 2, 2018. (R. 129, 138-46).

Plaintiff filed a timely request for a hearing and appeared before administrative law judge Karen Sayon (the "ALJ") on December 14, 2018. (R. 33). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Thomas F. Dunleavy (the "VE"). (R. 35-65). On March 14, 2019, the ALJ found that beginning April 1, 2017, Plaintiff's cirrhosis no longer meets Listing 5.05B because there has been no evidence of ascites in years. (R. 18, 19). Though the cirrhosis remains a severe impairment along with hypertension, obesity, metabolic syndrome, insulin resistance, lumbar stenosis, and degenerative disc disease, none of these impairments either alone or in combination meets or equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17-20). After reviewing the evidence, the ALJ concluded that since April 1, 2017, Plaintiff has had the residual functional capacity ("RFC") to perform light work except that he cannot have concentrated exposure to hazards (meaning no commercial driving and no work around dangerous moving machinery like a forklift), and he cannot work at heights. (R. 20-24).

The ALJ accepted the VE's testimony that a person with Plaintiff's background and this RFC could perform a significant number of jobs available in the national economy,

2

including housekeeper, cafeteria attendant, and office helper. (R. 24-25). As a result, the ALJ concluded that Plaintiff was not disabled at any time from the April 1, 2017 date of medical improvement through the date of the decision. (R. 25-26). The Appeals Council denied Plaintiff's request for review on February 1, 2020. (R. 1-5). That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. §§ 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal or remand, Plaintiff argues that the ALJ: (1) made a flawed RFC determination; (2) erred in weighing the opinion evidence of record; and (3) improperly evaluated his subjective statements regarding the limiting effects of his symptoms. For reasons discussed in this opinion, the Court finds that the case must be remanded for further consideration of Plaintiff's RFC in light of new evidence that was unavailable to the state agency consultants.

## DISCUSSION

**A.     Standard of Review**

Judicial review of the Commissioner's final decision is authorized by the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). In reviewing this decision, the Court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "'displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations.'" *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). *See also L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1151-52 (7th Cir. 2019). The Court "will reverse an ALJ's

3

determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

In making its determination, the Court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to her conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'" *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)). When the ALJ's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.     Five-Step Inquiry**

To recover DIB or SSI, a claimant must establish that he is disabled within the meaning of the Social Security Act.[2] *Shewmake v. Colvin*, No. 15 C 6734, 2016 WL 6948380, at *1 (N.D. Ill. Nov. 28, 2016). A claimant is disabled if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must

---

[2]     Because the regulations governing DIB and SSI are substantially identical, for ease of reference, only the DIB regulations are cited herein.

4

conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1139-40 (N.D. Ill. 2012).

**C.    Analysis**

    **1.    RFC**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in finding he has the RFC for light work. A claimant's RFC is the maximum work that he can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012). *See also* 20 C.F.R. § 404.1527(f)(2).

In determining that Plaintiff can perform light work, the ALJ placed great weight on the opinions from the state agency medical consultants, which she found very persuasive. (R. 23). On April 24, 2017, Prasad Kareti, M.D., stated that Plaintiff can occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; and sit, stand, and walk for about 6 hours in an 8-hour workday. (R. 83). Plaintiff also must avoid concentrated

5

exposure to hazards but has no other limitations. (R. 83-84, 92-93). Vidya Madala, M.D., affirmed this assessment on August 23, 2017 except she did not include any environmental limitations. (R. 708-14).

Plaintiff argues that the ALJ should not have relied on these opinions because neither consultant had access to subsequent records reflecting serious spinal problems. (Doc. 20, at 5-6). Specifically, a July 2018 MRI showed: likely right paracentral lateral recess disc protrusion resulting in mild to moderate degenerative central canal stenosis at T11-T12; mild disc bulge resulting in mild central canal narrowing at T12-L1; trace disc bulge with minimal neural foraminal narrowing without impingement at L1-L2; mild congenital canal narrowing with superimposed disc bulge, mild prominence of dorsal epidural fat, and mild facet/ligamentous hypertrophy resulting in mild central canal stenosis and minimal foraminal narrowing at L2-L3; congenital canal stenosis, trace disc bulge, mild to moderate facet/ligamentous hypertrophy, and mild bilateral neural foraminal narrowing without impingement at L3-L4; congenital canal stenosis with superimposed disc bulge, left foraminal disc protrusion, and mild to moderate facet/ligamentous hypertrophy resulting in mild central canal stenosis at L4-L5; mild left lateral recess stenosis with likely mild focal impingement of the descending left L5 nerve root and mild bilateral neural foraminal narrowing without impingement at L4-L5; disc bulge with superimposed central disc protrusion, epidural lipomatosis, and mild facet hypertrophy resulting in central canal stenosis at L5-S1; and mild bilateral neural foraminal narrowing without impingement and mild right lateral recess narrowing at L5-S1. (R. 977-78). In addition, Plaintiff presented with positive right dural stretch tests (which assess radiculopathy) on September 19 and October 30, 2018. (R. 1006, 1015). Plaintiff objects

6

that the ALJ was not allowed to evaluate the significance of these tests without a medical expert, noting that Drs. Kareti and Madala may have found him more limited had they reviewed these records. (Doc. 20, at 6-7).

"It is common for there to be a lag between the state agency physicians' reviews and the ALJ's decision, so the fact that new medical records came in after the state agency physicians conducted their reviews, is not, by itself, problematic." *Shelia M. v. Saul*, No. 20 C 664, 2021 WL 1784775, at *6 (N.D. Ill. May 5, 2021) (citing *Keys v. Berryhill*, 679 F. App'x 477, 481 (7th Cir. 2017)). "Rather, an outdated state agency problem occurs if there exists 'later evidence containing new, significant medical diagnoses [that] reasonably could have changed the reviewing physician's opinion.'" *Id.* (quoting *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018).

Here, the ALJ's heavy reliance on opinions from consulting physicians who lacked access to evidence of radiculopathy, significant spinal degeneration, and stenosis "raise[s] concern." *Durham v. Kijakazi*, __ F.4th __, 2022 WL 17089806, at *4 (7th Cir. 2022). "The Seventh Circuit has found that an ALJ errs by accepting 'uncritically' the opinions of two state-agency medical consultants who did not examine the claimant and provided their opinions without the benefit of more recent treatment records documenting additional severe impairments." *Kathy E. v. Kijakazi*, No. 20 C 50193, 2022 WL 16696268, at *6 (N.D. Ill. Nov. 3, 2022). Based on records available at the time of review, neither Dr. Kareti nor Dr. Madala considered lumbar stenosis or degenerative disc disease as relevant conditions. But evidence provided after review persuaded the ALJ to list both as additional severe impairments. (R. 17). In other words, the MRI results and evidence of radiculopathy "clearly changed the picture so much that it reasonably could

7

have changed the reviewing physician[s'] opinion[s]." *Kathy E.*, 2022 WL 16696268, at *6 (internal quotations omitted).

The Commissioner disagrees, arguing that Drs. Kareti and Madala had access to other records documenting Plaintiff's back problems. (Doc. 27, at 6). The only such record the Commissioner cites, however, is a November 9, 2011 treatment note indicating that Plaintiff's past medical history included chronic low back pain due to a herniated lumbar disc "seen on MR few years ago." (R. 415, 435). The MRI is not in the record and this evidence in no way placed the state agency consultants on notice of the spinal problems identified in the July 2018 MRI. Nor could either consultant have known that Plaintiff was assessed with lumbar radiculopathy in June, September, and October 2018. (R. 950, 952, 954, 1006, 1015). The Commissioner stresses that after reviewing the MRI results, pain management specialist Howard Robinson, M.D., recommended only physical therapy. (R. 1015). To begin, Dr. Robinson explained that he wanted to hold off on injection treatments because Plaintiff "is quite medically complicated with cirrhosis of the liver and some issues with his blood sugar," and because he was being evaluated by a neurologist. (*Id.*). Moreover, Dr. Robinson provided no assessment of Plaintiff's functional abilities. In such circumstances, the referral for physical therapy is not sufficient evidence that Plaintiff is capable of engaging in light work.

The Commissioner finally claims that Plaintiff failed to provide evidence that he suffers any functional limitations as a result of the problems identified on the MRI test. (Doc. 27, at 6). It is true that during Internal Medicine Consultative Examinations on April 8 and August 5, 2017, Plaintiff was able to: squat and stand on each foot alone; get on and off the exam table with no difficulty; walk more than 50 feet without support; and

8

toe/heel walk. He also had: a normal gait; normal grip strength; normal range of motion in the shoulders, hips, knees, ankles, cervical spine, and lumbar spine; negative straight leg raise tests bilaterally; and full motor strength of 5/5 in all limbs. (R. 689, 704). But a year later Plaintiff had developed radiculopathy and was referred to a pain management specialist. (R. 954). Dr. Robinson characterized the degeneration in Plaintiff's lumbar spine as significant and documented Plaintiff's complaints of pain across the back radiating into the right buttock. (R. 1006, 1010). Plaintiff described the pain as a stabbing and deep aching that increases with movements such as switching from sitting to standing, bending forward, or doing dishes. (R. 1003). He also reported back stiffness and weakness. (*Id.*). Given the change in Plaintiff's condition, the ALJ should have sought medical input to determine whether the MRI imaging supported Plaintiff's complaints of pain and impacted his ability to perform light work.

Viewing the record as a whole, the ALJ erred in giving substantial weight to the opinions from state agency consultants who did not have access to additional findings that could have affected the outcome of the case. No physician evaluated Plaintiff's physical functioning in light of the July 2018 MRI and radiculopathy tests, and the case must be remanded for further consideration of his RFC.

### 2. Remaining Arguments

The Court does not find any specific error with respect to Plaintiff's remaining arguments, but the ALJ should take the opportunity on remand to review all aspects of Plaintiff's RFC, along with his subjective allegations and the opinion evidence of record.

9

## **CONCLUSION**

For reasons stated above, Plaintiff's request to reverse or remand the ALJ's decision is granted, and the Commissioner's request to affirm the decision is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

ENTER:

Dated: December 1, 2022

_____
SHEILA FINNEGAN
United States Magistrate Judge